**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL WALTHER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 10-706** |
| | : | |
| **NALIN PATEL, D.M.D.** *et al.*, | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

RUFE, J.                                                                                                    **February 4, 2011**

Before the Court are motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants Nalin Patel DMD, Nalin Patel DMD PC, Advanced Dental Care, Advanced Dental Care LLC, and Fairless Hills Dental Center ("Dental Defendants") [doc. no. 20]; and Defendants Capital One Bank (USA), N.A., Capital One Financial Corporation, and Capital One N.A. ("Capital One Defendants") [doc. no. 16].[1]  For the reasons that follow, the Court will dismiss Plaintiff's claims that the Dental Defendants and the Capital One Defendants violated Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act for failure to state a claim.  The Court will also dismiss the state claims for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c).

**I.     PROCEDURAL & FACTUAL BACKGROUND**

Plaintiff Michael Walther, a resident of Fairless Hills, Pennsylvania, is a developmentally

---

[1]  Although Walther initially named "Capital One Health Care Finance" as a Defendant, Plaintiff and Capital One Defendants stipulated to amend the caption to correctly identify that Defendant and to make technical corrections to names of the other Capital One Defendants.  See doc. no. 12.

disabled adult who is unemployed but lives independently on a small fixed income.[2]  During the

relevant period he had no guardian or attorney.[3]  Dental Defendants maintain their principal

places of business in Bucks County, Pennsylvania.[4]  Capital One Defendants maintain their

principal places of business in Virginia.[5]

In February 2008, Walther contacted Dental Defendants[6] via phone to obtain an

examination, cleaning, and teeth whitening, claiming he wanted a "beautiful smile as seen on

TV," and was told he would need to appear in the office for an examination and an estimate.[7]

During that first visit, Walther was given an estimate of $600, which he was told he could pay in

installments.[8]  He scheduled the treatment for February 22, 2008.[9]

Walther alleges that during that February 22 appointment, he was "subjected to a barrage

of cosmetic dentistry promotional media including brochures, posters and video."[10]  He avers he

arrived at the Dental Defendants' office with "the purpose of acquiring the beautiful smile that

---

[2]  Compl. ¶¶ 1, 30.

[3]  Id. ¶ 21.

[4]  Id. ¶¶ 2–6.

[5]  Id. ¶¶ 7–9.

[6]  Walther does not specify which of the "Dental Defendants" he contacted.  Walther appears to
aver that the relevant transaction was with Defendant Patel's dental business, which uses a variety of
fictitious and corporate names.  See Pl.'s Resp. to Joint Mot. to Dismiss of Defs. Capital One Bank N.A.,
Capital One Financial Corp. and Capital One, N.A. ("Resp. to Capital One") at 6.  Plaintiffs' exhibits
suggest the services were rendered by Advanced Dental Care and its employees.  See Compl. Exs. A, C–F.

[7]  Compl. ¶ 25.

[8]  Id. ¶ 26.

[9]  Id.

[10]  Id. ¶ 27.

Dental Defendants had promised him, such as he sees both on TV and in the Dental Defendants' video."[11]  Dental Defendants told Walther they could complete the treatment that day.[12]

After examining Walther and unsuccessfully attempting to explain the proposed treatment and financing plan to Walther, Walther instructed Dental Defendants to telephone his friend, who, Walther claims, did not bind Walther to that proposed plan or represent that she had the authority to do so.[13]  Thereafter, Dental Defendants contacted Capital One Defendants regarding a $25,000 loan to finance the proposed treatment.[14]  Walther never spoke with or otherwise directly communicated with the Capital One Defendants.[15]

Dental Defendants gave Walther a series of documents to sign, including: (1) the Advanced Dental Care Financial Policy; (2) the Treatment Plan; (3) an Advanced Dental Care General Dentistry Treatment Form; (4) consent forms for "Fillings, Inlays, and Onlays," and for "Cosmetic Dentistry;" and (5) a Capital One Health Care Finance Credit Application.[16]

Walther characterizes the dental work as a "full-mouth restoration," and, indeed, the detailed, three-page treatment plan includes a listing of procedures to be provided—scaling and root planing, dental crowns, inlays and veneers—and the prices for each procedure, totaling

---

[11] Id.

[12] Id. ¶ 28.

[13] Id. ¶ 28(a).

[14] Id. ¶ 28 (b).

[15] Id. ("[A]ll communication was by and through Dental Defendants.").

[16] Id. ¶ 29.

$26,525.[17]  Walther signed a copy of that treatment plan, declaring that he had "not been pressurized [sic] by the staff or the doctor of Advanced Dental Care" and that he understood "all the guidelines of the treatment and the loan."[18]  Walther also signed the General Dentistry Treatment form authorizing "the dental restoration and treatments as explained to [him]," and the two consent forms authorizing "A. Patel" and associates to render any treatments deemed necessary or advisable.[19]

The Advanced Dental Care Financial Policy provided to Walther discloses that full payment for services is due the day treatment begins and offers financing through "third party finance offices," including Capital One and several other lenders, with loans up to 5 years.[20]

---

[17]  Id. ¶ 35 & Ex. B; Dental Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss Pl.'s Compl. of Defs. Nalin Patel, DMD, Advanced Dental Care, LLC and Fairless Hills Dental Center Pursuant to F.R.C.P. 12(b)(6) ("Dental Defs.' Mem.") Ex. 3.

Because Walther asserts throughout the Complaint that Defendants took advantage of his inability to understand the "paperwork he was instructed to sign," see Compl. ¶¶ 54, 60(f), 69(f), and identifies the treatment plan as among that paperwork, id. ¶ 29(b), this Court may consider the full treatment plan attached to Dental Defendants' Memorandum as Exhibit 1.  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (in deciding a 12(b)(6) motion to dismiss, a court may consider exhibits attached to the complaint and documents that form the basis of the claim; a document forms the basis of the claim if it is integral to or explicitly relied upon in the complaint), *abrogated in part on other grounds by* Twombly v. Bell Atl. Corp., 550 U.S. 544 (2007) *as recognized in* In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010).  The Court will not, however, consider the subsequent unnumbered page in Dental Defendants' Exhibit 1 because there is no indication that it is part of the treatment plan.  Nor will the Court consider Dental Defendants' Exhibit 2 (Capital One loan documents) because that document was not attached to or relied upon in the Complaint.

[18]  Compl. ¶ 29(b) & Ex. B.

[19]  Id. Exs. D–F.  The Cosmetic Dentistry consent form also authorizes Patel and his associates to render any treatment deemed "desirable."  It is unclear who Walther alleges actually carried out the treatment.  The Complaint names Nalin Patel as a Defendant, but the consent forms identify Dr. Arpan Patel as the "Dentist," and the Complaint alleges nothing as to what, if anything, Nalin Patel, individually actually did or said.

[20]  Id. Ex. A.  Walther alleges that the Capital One Defendants have a contract with Dental Defendants to refer patients to them for financing.  Id. ¶ 14.  Though Capital One Defendants dispute that,

Walther signed that form, declaring that he understood and accepted the terms of the policy.[21]

Dental Defendants contacted Capital One Defendants online to arrange for a $25,000 loan.[22] Walther signed the credit application,[23] and, within ten minutes after it was sent, Dental Defendants received telephone approval of the application for a $25,000 loan at 19.99% interest over a five-year term, at an actual cost of $40,000 over the life of the loan.[24] Although Walther alleges that the $25,000 was to be immediately disbursed to Dental Defendants, he also asserts that weeks after the treatment, he received the loan documents from Capital One and a bill from Dental Defendants.[25]

Dental Defendants performed most of the extensive cosmetic dentistry described in the treatment plan in a single day. Subsequently, the caps, crowns, and veneers loosened or completely detached, "leaving plaintiff with missing and deformed teeth, altering and worsening his bite, and substantially aggravating his pre-existing speech impediment."[26] Walther also complains of abnormal or loss of sensation in his mouth, loss and improper spacing of teeth, difficulty eating, and the risk of future periodontal and other dental disease.[27] In addition, his

---

at this procedural stage, the Court accepts all factual allegations in the Complaint as true. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).

[21] Compl. Ex. A.

[22] Id. ¶ 28(b).

[23] Id. Ex. G.

[24] Id. ¶¶ 30–32.

[25] Id. ¶¶ 30, 37. It is thus unclear from the Complaint whether the loan proceeds were disbursed to Walther or to Dental Defendants.

[26] Id. ¶ 36.

[27] Id. ¶ 40(c).

credit has suffered.[28]

      Walther generally alleges that the Dental Defendants manipulated or deceived Walther into signing the loan documents "by the in-office promotional media and by representing that Dental Defendants could and would provide Plaintiff virtually instantly with the clean, white teeth and beautiful smile that he desired."[29]  Defendants also purportedly misrepresented that the treatments were medically necessary.[30]  Walther claims Defendants knew or should have known that he did not understand or appreciate either the documents presented to him or Defendants' representations[31] about the cost and nature of the dental services and financing to be provided, and took advantage of his disability.[32]  Walther also alleges that Defendants failed to inform him of the extent and cost of the dental and financial services.[33]  Walther believed, based on his prior

---

[28]  Id. ¶¶ 56(g), 64(f), 73(g), 82(g).

[29]  Id. ¶ 32.

[30]  Id. ¶¶ 52, 66, 75.

[31]  Walther does not argue that the Capital One Defendants made any independent misrepresentations or omissions with respect to the financing or the treatment.  Instead, he asserts that the Dental Defendants acted as Capital One's agents and thus Dental Defendants' misrepresentations or omissions can be attributed to Capital One Defendants.  See Resp. to Capital One at 7.

      Based on his Complaint, Walther cannot attribute Dental Defendants' statements to Capital One Defendants because the Complaint alleges no facts from which an agency relationship might be plausibly inferred.  Agency requires that both parties understand the purported principal is in control of the undertaking at issue, the principal manifests intent that the agent shall act on its behalf, and the agent accepts the undertaking.  Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980); see also, e.g., Favinger v. Power Screen Int'l Distrib. Ltd., No. 92-4069, 1993 WL 156135, at *3 (E.D. Pa. May 12, 1993).  Plaintiff has alleged only a contractual relationship between Dental Defendants and Capital One Defendants.  Compl. ¶¶ 12, 14.

[32]  Compl. ¶¶ 34, 45 (inability to understand informed consent documents); 54 (inability to understand loan documents); 59, 68, 77 (inability to comprehend treatment, cost and financing); 60(f), 69(f), 78(f) (inability to appreciate Defendants' representations or paperwork).

[33]  Id. ¶¶ 60(b), 69(b), 78(b).

visit, that he was financing only $600—the estimated cost of cleaning and whitening presented at his first visit.[34]

On February 19, 2010, Walther filed the pending action against the Dental and Capital One Defendants in this Court [doc. no. 1], alleging:

- two state law claims against only the Dental Defendants: Negligence (Count I) and Negligence Under Restatement (Second) of Torts §§ 323 & 324 (Count II);

- four state law claims against all Defendants: violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. § 201 *et seq*. (Count III); Negligent Misrepresentation (Count IV); Intentional Misrepresentation (Count V); and Common Law Deceit (Count VI);

- two federal claims against all Defendants: violation of the Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count VII); and RICO Conspiracy (Count VIII).

Dental Defendants move under Rule 12(b)(6) to dismiss all but Count I. Capital One Defendants move to dismiss all of the claims against them (Counts III through VIII).

## II.  STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept a plaintiff's factual allegations as true and draw all logical inferences in favor of the non-moving party.[35]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[36]  The Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under

---

[34]  Id. ¶ 33.

[35]  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).

[36]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 564 (2007).

some viable legal theory.[37]  And the plaintiff must allege "enough facts to state a claim for relief

that is plausible on its face."[38]  The Court has no duty to "conjure up unpleaded facts that might

turn a frivolous action . . . into a substantial one."[39]

Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must plead mail and

wire fraud with particularity.[40]  This burden is satisfied by pleading the "date, place or time" of

the fraud or using "alternative means of injecting precision and some measure of substantiation

into their allegations of fraud."[41]  The plaintiff must also allege "who made a misrepresentation

to whom and the general content of the misrepresentation."[42]  The pleading must be sufficiently

detailed to put the defendant on notice of the "precise misconduct" of which it is accused,[43] by

pleading "the who, what, when, where, and how" of the fraud.[44]  To successfully plead specific

intent to defraud, however, a plaintiff need only satisfy the pleading standards under Rule

8(a)(2).[45]

---

[37]  See id. at 562 (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (5th Cir. 1984).

[38]  Id. at 570.

[39]  Id. at 562 (citing McGregor v. Indus. Excess Landfill, Inc., 856 F.2d 39, 42–43 (6th Cir. 1988)).

[40]  Fed. R. Civ. P. 9(b) ("in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

[41]  Lum, 361 F.3d at 224.

[42]  Id.

[43]  Id. at 223–24.

[44]  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quotations and citation omitted), abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), as recognized in Institutional Inv. Grp. v. Avaya, Inc., 564 F.3d 242, 276 (3d Cir. 2009).

[45]  Marangos v. Swett, No. 08-4146, 2009 WL 1803264, at *4 (3d Cir. June 25, 2009).

III.    DISCUSSION

A.  RICO Claims

Because the federal RICO[46] claims provide the only basis for subject matter jurisdiction over this Complaint, the Court's analysis begins there.[47]  Counts VII and VIII of Walther's Complaint allege that the Dental Defendants and Capital One Defendants violated both Section 1962(c) of RICO by "engaging in an institutionalized pattern of deceptive practices designed to promote buying of elective dental procedures via impulse, instant borrowing," and Section 1962(d) by conspiring to violate Section 1962(c).[48]

Section 1962(c) of the RICO statute provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[46]  18 U.S.C. §§ 1961–1968.

[47]  Walther asserts that this Court has both diversity and federal question jurisdiction over this case.  Compl. ¶¶ 16–18.  There is no diversity jurisdiction here, however, because both Walther and all Dental Defendants are residents of Pennsylvania.  Id. ¶¶ 1–6 (noting Walther is a resident of Fairless Hills, Pennsylvania and all Dental Defendants have their principal place of business in Bucks County).  Jurisdiction founded on 28 U.S.C. § 1332(a) requires that the plaintiff to be diverse from each defendant.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).

[48]  Compl. ¶¶ 94–96, 118.

Walther alleges that each of the Defendants either "committed and/or aided and abetted the commission of two or more acts of racketeering activity."  Id. ¶ 95.  But because it is well established that there is no aiding and abetting liability under the RICO statute, the Court finds Walther has not stated a claim for aiding and abetting a RICO violation.  See Pa. Ass'n of Edwards Heirs v. Rightenour, 235 F.3d 839, 840 (3d Cir. 2000).

To plead a Section 1962(c) violation, Walther "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[49] Walther alleges Capital One and Dental Defendants engaged in the predicate acts of mail and wire fraud, pursuant to Section 1961(1) and 18 U.S.C. §§ 1341 and 1343, by using the telephone, internet and mail to perpetuate their alleged fraud.[50] Defendants argue that the RICO claims must be dismissed because Walther has failed to allege the elements of a RICO claim by insufficiently pleading: (1) the existence of a RICO enterprise; (2) facts to support the predicate acts of mail and wire fraud; or (3) a pattern of racketeering activity.[51]

### 1. *Enterprise*

The Court finds Walther has sufficiently pleaded the enterprise element. A RICO "enterprise" may include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[52] In addition, the enterprise and RICO "person" (e.g., the defendant) must be "two distinct entities:

---

[49] Lum, 361 F.3d at 223.

[50] Compl. ¶¶ 28 (Dental Defendants contacted Capital One Defendants online to arrange for the loan); 31 (Dental Defendants received telephone approval of Walther's loan from Virginia-based Capital One Defendants); 37 (Walther received loan documents in the mail); 95 (alleging wire & mail fraud).

[51] Dental Defs.' Mem. at 3–8; Mem. of Law in Supp. of Joint Mot. to Dismiss Pl.'s Compl. by Defs Capital One Bank (USA) N.A., Capital One Financial Corporation and Capital One, N.A. ("Capital One Defs.' Mem.") at 7–9, 11–16.

Capital One Defendants also assert that Walther has not stated a cognizable RICO claim because he has alleged personal injury and only injuries to business or property are cognizable under Section 1962(c). Capital One Defs.' Mem. at 16. But Walther has alleged monetary loss of $25,000 plus interest, Compl. ¶ 98(f), and thus has alleged injury to property. See Reiter v. Sonotone Corp., 442 U.S. 330, 342 (1979) (money is property). That he also alleges personal injury does not defeat his RICO claim.

[52] 18 U.S.C. § 1961(4).

(1) a 'person;' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."[53]  Here, Walther pleads that the enterprise consists of an "association-in-fact" enterprise made up of Dental Defendants and Capital One Defendants.[54]

### a.    Distinctiveness

Capital One Defendants argue that Walther has violated the distinctiveness principle embodied in Section 1962(c) by naming as RICO persons all of the individuals or corporate entities that together form the alleged RICO enterprise.  But they overstate the strength of the case law supporting that conclusion.[55]  Though the Third Circuit has never decided this specific question, many district courts within this circuit have held otherwise,[56] and the weight of

---

[53] Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

[54] Compl. ¶ 92.

[55] Capital One Defendants cite district court cases from this Circuit and a single Third Circuit case.  See Capital One Defs.' Mem. at 13 (citing Glessner v. Kenny, 952 F.2d 702, 712 (3d Cir. 1991)); Capital One Reply at 4–5 (citing De Lage Landen Fin. Servs. v. Rasa Floors, LP, No 08-533, 2009 WL 564627, at *10 (E.D. Pa. Mar. 5, 2009); Zavala v. Wal-Mart Stores, Inc., 447 F. Supp. 2d 379, 383 (D.N.J. 2006); Kolar v. Preferred Real Estate Inv., Inc., No. 07-3864, 2008 WL 2552860, at *4-5 (E.D. Pa. Jun 19, 2008), aff'd on other grounds, 361 F. Appx. 354 (3d Cir. 2010)).

Notably, Glessner v. Kenny, cited by Defendants, not only involved a different question (whether a corporation could be a "person" under RICO when the alleged enterprise was made up of the corporation and its parent and successor), but its holding was abrogated by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co. Inc., 46 F.3d 258, 260–61 (3d Cir. 1995).  Defendants did not include, as they should have, this important subsequent case history.

[56] See, e.g., Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d  595, 611–12 (E.D. Pa. 2010) (title company defendant distinct from its title agent though together they formed the alleged enterprise); Schwartz v. Lawyers Title Ins. Co., 680 F. Supp. 2d 690, 704–06 (E.D. Pa. 2010); Emcore Corp. v. PricewaterhouseCoopers LLP, 102 F. Supp. 2d 237, 259–61 (D.N.J. 2000) (finding partnership may be sued as defendant though it is a member of the alleged association in fact); S&W Contracting Servs., Inc. v. Phila. Housing Auth., No. 96-6513, 1998 WL 151015, at *6 (E.D. Pa. Mar. 25,1998); Hanrahan v. Britt, No. 94-4615, 1995 WL 422840, at *7 (E.D. Pa. July 11, 1995) (Amway as "person" was sufficiently distinct from the enterprise made up of Amway and its distributors); PTI Servs., Inc. v. Quotron Sys., Inc., No. 94-2068, 1995 WL 241411, at *12 (E.D. Pa. Apr. 19, 1995); Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., No. 95-1698, 1995 WL 455969, at *6 (E.D. Pa. July 27, 1995); Crown Cork

authority in the circuit courts of appeals is contrary to Defendants' approach.[57] It is clear that a defendant may not, on its own, make up the entire enterprise—for example, when a corporation is named as both the "person" and the "enterprise."[58] But there is no sound reason for concluding that a person that forms only part of an alleged association-in-fact made up of multiple unaffiliated corporate entities or individuals should be deemed synonymous with the enterprise: "A part of the whole does not share identity with the whole."[59] Here, Walther alleges an enterprise made up of a natural person and various separate corporate entities. Each are separable and legally distinct from the enterprise itself and thus satisfy the distinctiveness requirement. Moreover, the policy basis offered by the Eighth Circuit in rejecting Defendants' proposed rule is persuasive:

> A collective entity is something more than the members of which it is comprised. If five persons form an association in fact and engage in a pattern of racketeering activity such as drug smuggling and murder, an individual member could never be prosecuted for violating RICO under the appellants' reasoning because he or she would not be considered distinct from the enterprise. We do not believe that

& Seal Co. v. Ascah, No. 93-2933, 1994 WL 57217, at *2 (E.D. Pa. Feb. 18, 1994) (Pollak, J.).

[57] Compare Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361–62 (9th Cir. 2005) (Dupont may be named as defendant though it is among the entities making up the association-in-fact); Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (section 1962(c) permits a partial overlap between the RICO person and the RICO enterprise); Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 995 (8th Cir. 1989) (individual members of an enterprise are distinct from the enterprise); and United States v. Perholtz, 842 F.2d 343, 353 (D.C. Cir. 1988) (separateness principle not violated by naming as defendant a "person" who was also alleged to be a member of the association-in-fact enterprise); with Entre Computer Ctrs., Inc. v. FMG of Kansas City, Inc., 819 F.2d 1279, 1287 (4th Cir. 1987) (franchisor could not be a person and member of an association-in-fact formed by the franchisor and its separately incorporated franchisees), overruled as it relates to §1962(a) by Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990).

[58] See Jaguar Cars, 46 F.3d at 268 (noting "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient").

[59] Brokerage Concepts, 1995 WL 455969 at *6.

Congress envisioned that this type of conduct would be insulated from RICO prosecutions.[60]

This Court agrees and joins other courts that have concluded the distinctiveness principle is not violated merely by naming as a RICO person a legally distinct entity that is also a member of the alleged association-in-fact enterprise so long as that person is not the enterprise's sole member or does not merely conduct the regular affairs of the alleged enterprise such that it is indistinguishable from it.[61]

Capital One Defendants also argue that even if the distinctiveness requirement is satisfied by naming as defendants fewer than all members of an association-in-fact, it is violated if all members of the enterprise are named.[62] Defendants have offered no principled basis for why this should be so, and this Court declines to conjure one up for them. Indeed, such a rule would prevent a plaintiff or the government from prosecuting all potentially liable members of an association-in-fact enterprise.

### b.    Structure

Both sets of Defendants contend that Walther has not sufficiently pleaded the enterprise's organizational structure.[63] An "association-in-fact enterprise must have at least three structural

---

[60] Atlas Pile Driving, 886 F.2d at 995. The Third Circuit has endorsed the Eighth Circuit's reasoning in that case. See Brittingham v. Mobil Corp., 943 F.2d 297, 302 (3d Cir. 1991) (citing with approval Atlas Pile Driving Co., 886 F.2d at 995), *abrogated on other grounds by* Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), *as recognized in* Jaguar Cars, 46 F.3d at 262–65.

[61] See, e.g., Riverwoods Chappaqua Corp., 30 F.3d at 344 ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

[62] Capital One Reply at 4.

[63] Capital One Defs.' Mem. at 14; Dental Defs.' Mem. at 6.

features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[64] Under this "undemanding standard,"[65] the enterprise need not have formal mechanisms for controlling the enterprise's affairs, and can be an entity where decisions are made on an ad hoc basis.[66]

Walther has alleged sufficient facts as to the structure of the alleged enterprise. He has alleged that the enterprise had the "common purpose . . . of defrauding [patients by] engaging in an institutionalized pattern of deceptive practices designed to promote impulse buying of elective dental procedures via impulse borrowing."[67] And because Walther has alleged that Dental Defendants and Capital One Defendants have a contractual relationship to provide reciprocal benefits to one another—the availability of in-office instant credit to dental patients that facilitates the purchase of dental services[68]— he has sufficiently pleaded details from which this court can infer not only a relationship among the members, but also one of sufficient duration to carry out the purpose.[69] Finally, though Walther must allege an enterprise that is separate from

---

[64] Boyle v. United States, 129 S. Ct. 2237, 2244 (2009).

[65] In re Ins. Brokerage Antitrust Litig., 618 F.3d at 374.

[66] Boyle, 129 S. Ct. at 2245.

[67] Compl. ¶ 96.

[68] Id. ¶¶ 12, 14.

[69] See Schwartz, 680 F. Supp. 2d at 707 (adequate details of organization provided where plaintiff alleged enterprise exists for each member to advance its own interests); Grant v. Turner, No. 09-2381, 2010 WL 988537, at *10 (D.N.J. Mar. 12, 2010) (enterprise sufficiently alleged where plaintiffs alleged membership club sellers worked in conjunction with credit card companies to provide instant credit for purchases, where plaintiff alleged both the purpose of the enterprise and that credit cards were available at sales presentations); CIT Grp./Equip. Fin., Inc. v. Krones, Inc., No. 09-432, 2009 WL 3579037, at *9 (W.D. Pa. Sept. 16, 2009) (enterprise sufficiently pleaded where complaint alleged *inter alia* a symbiotic relationship in which members of the enterprise were contractually bound).

the pattern of racketeering activity,[70] he has done so here. "Allegations that members of the enterprise . . . provided 'legitimate services during the period in which they were engaged in racketeering activities' satisfies this element."[71] Walther has alleged a legitimate contractual business relationship between the Dental Defendants and Capital One Defendants to offer real-time financing to patients that was allegedly used to facilitate the fraud. Walther has thus sufficiently pleaded the enterprise element.

### 2. *Pattern of Racketeering Activity*

### a. **Predicate Acts & Federal Rule of Civil Procedure 9(b)**

Defendants argue that Walther has not sufficiently pleaded facts that constitute mail and wire fraud predicates.[72] The mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, "prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud."[73] Both require fraudulent intent.[74] The scheme must involve a "fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and

---

[70] Boyle, 129 S. Ct. at 2245 (citation and quotations omitted).

[71] Freedom Med., Inc. v. Gillespie, 634 F. Supp. 2d 490, 506 (E.D. Pa. 2007) (citing United States v. Console, 13 F.3d 641, 652 (3d Cir. 1993)).

[72] Capital One Defendants argue that Walther has not alleged he relied on any misrepresentations or omissions. Capital One Defs.' Mem. at 16. They are mistaken. See Compl. ¶ 67 ("Defendants' representations regarding the examination, cleaning and whitening of his teeth, the estimated cost thereof, and the cost of financing therefor were material facts . . . [and Walther] was thereby induced to purchase such dental and financing services from the Defendants.").

[73] Lum, 361 F.3d at 223 (citing 18 U.S.C. §§ 1341, 1343).

[74] Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc., No. 03-1713, 2003 WL 23155074, at *3 (3d Cir. Dec. 8, 2003) (citing United States v. Pharis, 298 F.3d 228, 233 (3d Cir. 2002)).

comprehension,"[75] though the communication via the mails or interstate wires need not itself be fraudulent so long as it is "incident to an essential part of the scheme."[76] An omission may be sufficient to state a claim if it results in "'the deprivation of something of value by trick, deceit, chicane, or overreaching.'"[77] Here, though Walther has pleaded with particularity the time, date and place of the alleged conduct, he has failed with respect to the "who," "what" and "how" of the mail and wire fraud as required under Rule 9(b) of the Federal Rules of Civil Procedure.

Walther does not sufficiently plead *who* made the alleged misrepresentations because he merely identifies "Dental Defendants," as a group, as "the deceiver."[78] The failure to identify the speaker of the deceptive statements is alone sufficient to dismiss the RICO claim.[79] This is not a case where the general identity of the speaker or actor would not be in a plaintiff's possession such that this requirement might be relaxed.[80] All of the alleged misrepresentations or omissions allegedly occurred while Walther was at Advanced Dental Care's offices on the day of his treatment. Surely he is aware of with whom he spoke or interacted, at least generally by function

---

[75] Lum, 361 F.3d at 223 (quotations omitted) (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998)).

[76] Schmuck v. United States, 489 U.S. 705, 711, 714–15 (1989).

[77] Kolar v. Preferred Real Estate Inv., Inc., No. 08-3119, 2010 WL 104500, at *5 (3d Cir. Jan 12, 2010) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)).

[78] Pl.'s Resp. to Dental Defs. at 8. Walther admits that he is not alleging that more than one Dental Defendant made the alleged misrepresentations. Pl.'s Resp. to Capital One at 7.

[79] Klein v. Gen'l Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999) (Rule "9(b) requires at a minimum that the plaintiff identify the speaker of the allegedly fraudulent statement.").

[80] See, e.g., Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (plaintiffs cannot be expected to have detailed knowledge of corporation's internal affairs).

or position, if not by name.  His failure to identify those persons in the Complaint is fatal; it does not provide the Defendants notice of the precise misconduct of which they are accused.

Moreover, Walther has not sufficiently pleaded the "what" or "how" required to state a claim for mail and wire fraud, though this is arguably a closer question.  As an initial matter, the Court must disregard the allegations that are generalized and conclusory,[81] such as allegations that Defendants "engaged in deceptive and fraudulent conduct"; "manipulated" Walther into signing loan papers; "committ[ed] consumer fraud;" "acted deceptively;" "deceived Plaintiff into signing a contract to borrow $25,000."[82]  None of these statements are backed by facts suggesting how Walther was deceived or manipulated.  And though Walther repeatedly and generally refers to Defendants' "representations" regarding the treatment, its costs and the costs of financing,[83] he says almost nothing about *what* those representations were.  In fact, in the entire Complaint, Walther identifies only three representations ever made by any Defendant.[84]

---

[81]  In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 150 (3d Cir. 2004).

[82]  E.g., Compl. ¶¶ 53, 54, 60, 69, 75, 78.

[83]  Id. ¶¶ 58, 67, 76 (referring to "Defendants' representations regarding the examination, cleaning and whitening of his teeth, the estimate cost thereof and the estimated cost of financing thereof"); 54, 69, 78 (alleging that Defendants took "full advantage to Plaintiff's inability to appreciate the Defendants' financial services representations or the paperwork he was instructed to sign").

[84]  In his responsive briefing, Walther argues that the Defendants misrepresented that Walther "could receive a beautiful smile such as he saw on Dental Defendants' promotional materials . . . for the borrowed sum of Six Hundred Dollars . . . ."  Pl.'s Resp. to Capital One at 4-5.  The Complaint, however, does not allege this.  Instead, Walther alleges that on his *prior* visit to Dental Defendants' office, he was given an estimate of $600 for teeth cleaning and whitening.  Compl. ¶ 26.  He states that when he returned on February 22 for treatment, he "believed at all times that he was financing the Dental Defendants' examination and treatment estimate of $600 provided to him in person during his . . . initial mid-February . . . visit."  Id. ¶ 33.  Nowhere in the Complaint does Walther allege that on February 22 he was told the extensive treatment itemized in the documents provided to him that day would cost just $600 or that Defendants were aware of his erroneous belief.  Consequently, the Court does not consider the post-Complaint allegation that Dental Defendants made this misrepresentation.  See Frederico v. Home Depot, 507 F.3d 188, 201–02 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the

-17-

First, Walther alleges that "Defendants recklessly and intentionally misrepresented that [he] would receive dental care including clean, white teeth and a beautiful smile as he sees on TV" when they knew he could not understand the nature of the financial and dental services or their costs.[85]  Though this allegation identifies the general content of the representation, it does not present any facts suggesting the representations were made knowing of their falsity.  And because Walther clearly received "dental care" that involved teeth cleaning and cosmetic dentistry,[86] the alleged "falsity" here apparently arises from the resulting poor quality of those services and harm to Walther.  But that complaint sounds in negligence or breach of contract, and Walther cannot convert it to fraud by labeling the statement a "misrepresentation"[87] without any facts from which this court can plausibly infer that Dental Defendants knew they could not deliver on the promised services.

Second, Walther alleges that Defendants "intentionally misrepresented" to Plaintiff that the treatment was "medically necessary dental work and restoration."  Defendants argue that not only is this statement inadequate because it fails to allege *what specifically* Walther was told about medical necessity, it is contradicted by Walther's assertion that he believed he was going to receive treatments to obtain white, clean teeth and a beautiful smile—e.g., cosmetic procedures.[88]

---

sufficiency of [the] complaint under Rules 9(b) and 12(b)(6).").

[85]  E.g., Compl. ¶¶ 59, 68.

[86]  Dental Defs.' Mem. Ex. 3 (treatment plan itemizing scaling and root planing).

[87]  Cf. Kolar, 2010 WL 104500 at *6 (noting plaintiffs allegations sound in contract and plaintiff "cannot successfully transmute them into RICO claims by simply appending the terms 'false' and 'fraudulent'); Hilton Sea, Inc. v. DMR Yachts, Inc., 750 F. Supp. 35, 39 (D. Me. 1990) ("A failure to perform as promised does not, without more, constitute fraud.").

[88]  Dental Defs.' Mem. at 6–7.

Additionally, the Court notes Walther signed the "Cosmetic Dentistry" consent form.[89]  In light

of those facts, Walther's allegation is not sufficiently particular.

Third, Walther alleges that Defendants misrepresented that the "dental and financial

services to be rendered were of high quality, well above minimal standards of acceptable care in

the community."[90]  Not only does this allegation lack the specificity required under Rule 9(b), it

seems plain that such subjective and unverifiable statements are more puffery than dirty pool,

and are thus not actionable as mail or wire fraud.[91]

Walther's allegations of material omissions likewise are insufficient.  He claims that

defendants knowingly "conceal[ed], suppress[ed] or omitt[ed]" material facts by failing to inform

him of the extent and costs of the dental and financial services.[92]  This allegation is far too

general to satisfy Rule 9(b) since it states nothing about *what* material information Defendants

failed to reveal to Walther.  And mere non-disclosure, without more, is insufficient to state a mail

or wire fraud claim.[93]  Because the Complaint never states what Walther *was* told on February 22

regarding the services he was to receive that day and their costs, this Court cannot even infer

what omission might rise to the level of fraud.  Moreover, the detailed treatment and consent

---

[89]  Compl. Ex. F.

[90]  Id. ¶¶ 60, 69.

[91]  See Corley v. Rosewood Care Ctr., 388 F.3d 990, 1009 (7th Cir. 2004) ("A generic promise to provide "high quality" services cannot . . . be the basis of a [RICO] mail fraud claim."); United States v. Pearlstein, 576 F.2d 531, 540 n.3 (3d Cir. 1978) (assertions that company was "nationally known" and sold products that were "among the finest ... in the world" are "not cognizable under the federal mail fraud statute.").

[92]  Compl. ¶¶ 39(h), 49, 54, 60, 69, 78.

[93]  See Kehr Packages, 926 F.2d at 1416.

documents that Walther signed demonstrate that Walther was informed not only about the number and nature of the services he was to receive, which went far beyond cleaning and whitening, but also about their individual cost.  Under these circumstances, the Complaint does not plead with particularity "the deprivation of something of value by trick, deceit, chicane, or overreaching."

The gravamen of Walther's Complaint is that Defendants took advantage of his inability to comprehend what he was told and his susceptibility to marketing information.[94]  Though the "ordinary prudence" standard for mail or wire fraud does "not . . . grant permission to take advantage" of those with lesser mental abilities through a deliberately fraudulent scheme,[95] Walther cannot successfully allege fraud based on those vulnerabilities without some facts suggesting how Defendants knew or should have known of those limitations and their intent to deceive him through misrepresentations or omissions.  Not only has Walther insufficiently pleaded a misrepresentation or omission, he has not alleged any facts suggesting how Defendants may have had notice of his disabilities.  Moreover, he asserts he lived independently and without an appointed guardian.[96]  Walther's allegation that the Dental Defendants spoke with Walther's

---

[94]  Throughout the Complaint Walther repeatedly states his inability to understand the nature of the services, Defendants representations and asserts that Defendants "took advantage" of him knowing of his limited inabilities.  Compl. ¶¶ 34, 45 (inability to understand informed consent documents); 54 (inability to understand loan documents); 59, 68, 77 (inability to comprehend treatment, cost and financing); 60(f), 69(f), 78(f) (inability to appreciate Defendants' representations or paperwork and alleging Defendants took advantage of Walther's inability to do so).

[95]  United States v. Thomas, 377 F.3d 232, 242–43 (2d Cir. 2004) (ordinary prudence standard is not a shield which a defendant may use to avoid a conviction for a deliberately fraudulent scheme); see also United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009) (a "defendant who intends to deceive the ignorant or gullible by preying on their infirmities is no less guilty").

[96]  Compl. ¶ 21.

friend to explain the dental services and financing might suggest some knowledge of his limitations,[97] but without some facts as to what Dental Defendants said during that conversation or what rationale Walther gave them for requesting that they phone his friend, Walther's allegations are insufficient for this Court to infer their knowledge of his limitations and any intent to take advantage of them. At base Walther appears to allege that the combination of the video and other marketing materials that he was exposed to while in the dental office, none of which are alleged to be false or misleading, the availability of instant credit to finance the dental services, and Walther's susceptibility to those marketing tactics caused him to purchase the treatments and take out the loan.[98] While the Court is not unsympathetic to Walther's plight, he has not sufficiently pleaded mail or wire fraud.

### b.    Pattern of Racketeering Activity

Even if this Court accepts that Walther sufficiently alleged fraudulent activity, he has not sufficiently alleged a *pattern* of racketeering activity. A pattern of racketeering activity requires, at least two acts of racketeering activity within a ten-year period[99] that are related to each other

---

[97]    Id.. ¶ 28(a).

[98]    See id. ¶¶ 32 ("[B]y their in-office promotional media, and by representing that Dental Defendants could and would provide Plaintiff virtually instantly with the clean, white teeth and beautiful smile that he desired, the Dental Defendants knowingly manipulated the Plaintiff into signing papers that provided for the Capital One Defendants' disbursement of $25,000 to Dental Defendants at the rate charged to Plaintiff of 19.99% annually . . . ."); 96 (Defendants "engag[ed] in an institutionalized pattern of deceptive practices designed to promote impulse buying of elective dental procedures via impulse, instant borrowing").

[99]    18 U.S.C. § 1961(5); H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237 (1989).

and "amount to or pose a threat of continued criminal activity."[100]  Though Walther has

sufficiently pleaded relatedness, he has not pleaded facts that meet the continuity requirement.

Acts are related if they have "the same or similar purposes, results, participants, victims

or methods of commission."[101]  Here, Walther has alleged that Capital One Defendants and

Dental Defendants communicated regarding the loan via interstate use of internet and phone lines

and that Capital One mailed the loan documents to Walther[102]—acts that are alleged to have had

the same purpose, same result, same participants and the same victim.[103]

Continuity is established by alleging either predicates extending over a substantial period

of time (closed-end continuity), or predicates that threaten future criminal activity (open-ended

continuity).[104]  Because Walther alleges only three predicate acts of mail or wire fraud that

occurred within just several weeks of each other, he has not sufficiently pleaded closed-end

continuity.[105]  Open-ended continuity can be established by demonstrating: (1) a small number of

related acts that, though extending over a short period of time, "themselves include a specific

threat of repetition extending indefinitely into the future," as in the case of a protection racket

---

[100]  H.J. Inc., 492 U.S. at 239.

[101]  Id. at 240.

[102]  Each use of the mails or interstate wires is a separate violation of the mail and wire fraud statutes even if it was part of the same fraud, and thus sufficient to meet this minimum requirement of two predicate acts.  Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1472 (D.N.J. 1986).

[103]  See Banks v. Wolk, 918 F.2d 418, 422 (3d Cir. 1990) (relatedness satisfied where alleged scheme involved a single transaction and had a common goal).

[104]  H.J.Inc., 492 U.S. at 241–43.

[105]  See id. at 243 (predicate acts extending over a few weeks or months insufficient); Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995) (en banc) (noting the Third Circuit has not found closed-end continuity where conduct lasted twelve months or less).

where the threat is implicit in the nature of the predicate; or (2) where the predicate acts are a "regular way of conducting [a] defendant's ongoing legitimate business."[106]  Walther has not pleaded predicate acts that themselves threaten repetition; monthly payments on a loan, even if that loan were fraudulently induced, would not meet the criteria since the initial act of fraudulent inducement is not repeated by otherwise legal requests for payment.  Nor has Walther alleged facts to suggest that commission of the predicates are part of the Defendants' regular way of doing business.[107]  Though Walther has alleged that Capital One and Dental Defendants have an ongoing contractual relationship to provide for instant credit for dental services, he has not asserted any facts to suggest that mere availability or ongoing operation of this financing arrangement is any way fraudulent.  It is the predicate *fraud* that must be the "regular way of doing business," not the operation of the legitimate business.  Walther has not alleged any facts to suggest that Defendants have perpetrated the predicates alleged—mail and wire fraud—either before or since Walther's treatment, on Walther or anyone else.  His conclusory allegation that Defendants engaged in an "institutionalized pattern of deceptive practices" designed to promote impulse buying and borrowing is insufficient.[108]  RICO is intended to criminalize long-term criminal conduct, not single instances of fraud.[109]  Thus even if Walther sufficiently alleged

---

[106]  See id. at 242–43.

[107]  For example, continuity would be found where "a 'legitimate' businessman . . . regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts, for instance by using the postal service as a means of accomplishing his scheme."  Tabas, 47 F.3d at 1293.

[108]  Compl. ¶ 96.

[109]  H.J. Inc., 492 U.S. at 242.

racketeering activity, he has not pleaded the requisite pattern.[110]

### 3. *RICO Conspiracy*

Because Walther has failed to state a claim under Section 1962(c), his conspiracy claim pursuant to Section 1962(d) also fails.[111]

Accordingly, the Court will dismiss without prejudice both of Walther's RICO claims (Counts VII and VII) for failure to state a claim.

### B. Supplemental Jurisdiction Over the State Claims

The only claims remaining (Counts I through VI) are based on Pennsylvania law. Although federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state claims that form "part of the same case or controversy," a court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."[112] The Third Circuit directs that, "where the claim over which the district court has original jurisdiction is dismissed before trial,

---

[110] The Third Circuit has used a series of factors to conduct a pattern analysis: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. See Barticheck v. Fidelity Union Bank/First Nat'l State, 832 F.2d 36, 38–39 (3d Cir. 1987). These factors remain relevant to the extent that they bear on continuity and relatedness. Banks, 918 F.2d at 423. Factors one, two, and six appear most relevant, with the sixth factor interpreted as the threat of recurrence. Tabas, 47 F.3d at 1298, 1300 (Becker, J. concurring). Applying them here results in the same finding that pattern is insufficiently alleged: three predicate acts occurring over several weeks with no facts suggesting recurrence.

[111] In re Ins. Brokerage Antitrust Litig., 618 F.3d at 373 ("[A] § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'") (quoting Salinas v. United States, 522 U.S. 52, 65 (1997)); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) (claim "based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

[112] 28 U.S.C. § 1367(a), (c)(3).

-24-

the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[113]

Here, these factors warrant dismissal of Walther's state law claims. First, there is no judicial economy in trying the state claims here: the case is in its earliest stages, an answer has not been filed, discovery has not occurred and trial has not been scheduled.[114] Second, state court is an equally, if not more, convenient forum given that the events giving rise to the claim arose in Bucks County and all of the in-state defendants reside there. Because no federal issues remain, the Court will dismiss the state law claims without prejudice pursuant to Section 1367(c)(3), and notes Walther may transfer his state claims to state court under 42 Pa. C.S.A. § 5103(b).[115]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss all claims against all Defendants without prejudice. An appropriate order follows.

---

[113] Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (citing *inter alia* Growth Horizons, Inc. v. Del. County, 983 F.2d 1277 (3d Cir. 1993)).

[114] See, e.g., Plum Prop. Assocs., Inc. v. Mineral Trading Company, LLC, No. 09-1059, 2009 WL 5206013, at *5 (W.D. Pa. Dec. 23, 2009) (declining to exercise jurisdiction over state law claims after dismissing RICO claims because of the early stage of proceeding prior to significant discovery).

[115] See id.; see also Williams v. F.L. Smithe Mach. Co., 577 A.2d 907, 909 (Pa. Super. 1990) (plaintiff may transfer to state court a timely filed action in federal court that is dismissed for lack of jurisdiction, and state action will be deemed filed on the date it was first filed in the federal court).